BENJAMIN GRABER, APPELLEE, V. GEORGIA KLINE GRABER, APPELLANT.

374 N.W.2d 8

Filed September 20, 1985.    No. 84-614.

Jeanne A. Weaver and Edward D. Hotz of Hotz, Kizer & Jahn, P.C., for appellant.

Steven J. Lustgarten of Lustgarten & Roberts, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

Georgia Kline Graber appeals from an order entered by the district court for Douglas County, Nebraska, denying her application to modify the decree dissolving her marriage and awarding child support by increasing the amount awarded. We affirm.

The record discloses that the appellant, Georgia Kline Graber, and the appellee, Dr. Benjamin Graber, were married March 3, 1973, and have three children, one of whom has now attained majority. On August 4, 1980, the marriage of the parties was dissolved by decree entered in the district court for Douglas County, Nebraska. The decree reflects that the petitioner was Dr. Graber and the respondent Ms. Graber. The decree further reflects that Ms. Graber did not attend the trial and that matters relating to division of property, custody of children, and child support were arrived at by mutual agreement of the parties, pursuant to an alimony and property settlement agreement previously executed by the parties and approved by the court. Pursuant to that property settlement agreement, Ms. Graber was awarded custody of the three minor

children and Dr. Graber was ordered to pay child support in the amount of $250 per month per child.

Ms. Graber now maintains that there has been a material change of circumstances entitling her to an increase in child support. It is clear that unless there has been a material change of circumstances, Ms. Graber is not entitled to any modification of the decree approving the agreement into which she entered at the time of the divorce. It is a well-established principle that child support payments are not subject to modification in the absence of a material change of circumstances occurring subsequent to the entry of the decree of a nature requiring modification in the best interests of the children. See, *Tworek v. Tworek*, 218 Neb. 808, 359 N.W.2d 764 (1984); *Helgenberger v. Helgenberger*, 209 Neb. 184, 306 N.W.2d 867 (1981).

This court has recognized that the issue of whether there has been a material change of circumstances is a factual determination and, hence, is often incapable of precise definition. In *Morisch v. Morisch*, 218 Neb. 412, 413, 355 N.W.2d 784, 785-86 (1984), we said:

"Material change in circumstances" in reference to modification of child support is analogous to modification of alimony for "good cause." See Neb. Rev. Stat. § 42-365 (Cum. Supp. 1982); cf. *Chamberlin v. Chamberlin*, 206 Neb. 808, 814, 295 N.W.2d 391, 395 (1980) (modification of alimony on account of a "change of circumstances of a material and substantial nature"). "Material change in circumstances" eludes precise and concise definition. Courts may consider various factors to determine if a material change in circumstances has occurred. Among some of the factors or circumstances considered by a court are a change in the financial resources or ability to pay on the part of the parent obligated to pay support, needs of the child or children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction of income, and the duration of the change, namely, whether the change is temporary or permanent. See 24 Am. Jur. 2d *Divorce and Separation* §§ 1082-1088 (1983). Alteration and passage

from one condition to another is essential for a material change in circumstances.

Although incapable of precise definition, nevertheless the party seeking modification has the burden of showing not only a change of circumstances but also that such change is material. Absent such a showing, the district court cannot modify a decree previously entered. Furthermore, not all material changes justify modification. Indeed, if the changes are of the type that necessarily were in the contemplation of the parties at the time the decree was entered, even though material, such changes do not, of themselves, justify a modification. For instance, it obviously is in the contemplation of all of the parties in every case that the children involved will grow older and that their needs will therefore change. That fact, standing alone, is not sufficient to justify a modification of a decree of dissolution. In *Cooper v. Cooper*, 219 Neb. 64, 66, 361 N.W.2d 202, 204 (1985), we said:

> Any changes in circumstances which were within the contemplation of the parties at the time of the decree, or that were accomplished by the mere passage of time, do not arise to the level to justify a change or modification of the order. *Albers v. Albers*, 213 Neb. 471, 329 N.W.2d 567 (1983).

Were we to hold otherwise, a party might enter into a settlement agreement relying on the promise of the other party to settle on the basis of the agreement, only to discover that he or she might be obligated to make increased payments even though everyone knew about the eventual change and took it into account when entering into the agreement. We should not encourage parties to an agreement found by the district court to be fair, equitable, and not unconscionable to accept the benefits in settlement and then seek to alter the agreement, absent a material change of circumstances which was not within the contemplation of the parties. Settlement agreements offered to the district court for approval should have greater finality once approved.

Ms. Graber maintains that the material changes of circumstances which justify a modification are the following: (1) that Dr. Graber has substantially increased his gross income;

(2) that she has suffered an illness which precludes her from gainful employment; (3) that her mortgage payment has gone up; and (4) that she desires to place the two younger children in a private school. An examination of the record, however, discloses that these matters do not amount to material changes of circumstances or, if material changes, were within the contemplation of the parties at the time the agreement was signed and approved by the court.

With regard to the matter of Dr. Graber's income, while his gross income has increased, the undisputed evidence is that his adjusted gross income as reported for federal income tax purposes has decreased since the entry of the decree. The record discloses that his adjusted gross income for the years involved was as follows: 1980—$47,288; 1981—$41,357; 1982—$39,553; 1983—$41,142. While it is true that Dr. Graber has realized an increase in his gross income, it is likewise true that he has incurred increased expenses. Although one may argue whether the expenses should have been incurred, there is simply no evidence to establish that the expenses are not legitimate or not fairly incurred. During the same period of time, the record discloses that Ms. Graber has realized a substantial increase in her adjusted gross income. Her adjusted gross income for federal income tax purposes, as reflected by the evidence, was as follows: 1980—$8,239; 1981—$29,219; 1982—$35,717; 1983—$22,885. The evidence presented to the district court discloses that as of the time of the hearing in 1983, Dr. Graber had less adjusted gross income than he did at the time the decree was entered, while Ms. Graber had substantially greater adjusted gross income. Ms. Graber's contention that a modification should be made by the district court on the basis that Dr. Graber has increased income is simply without support in the evidence. Considering gross income without considering offsetting expenses is not appropriate. Nor does such an exercise establish a material change of circumstances not contemplated by the parties which would authorize a court to modify a decree of dissolution approving a property settlement agreement.

Insofar as the illness is concerned, the evidence likewise does not support the claim made by Ms. Graber. The evidence

reflects that upon moving to California Ms. Graber resumed work as a registered nurse and completed her master's degree in psychology. As of early 1984, she was employed full-time as a registered nurse and also worked about 48 hours per month as a registered nurse on a part-time basis. She was laid off from her full-time position at the end of March 1984, but was able to increase the hours at her other job from part time to full time. On April 13, 1984, Ms. Graber had surgery and, due to complications, had not yet returned to work at the time of the hearing on July 2, 1984. She testified, however, that her disability would probably not last beyond August 1, 1984, and that, because of her excellent qualifications, she would have no trouble obtaining work once she had recovered from the surgery. It is clear that the illness causing her inability to work was temporary in nature and that once recovered she could return full time to gainful employment. Her temporary unemployment is not a material change of circumstances.

Likewise, with regard to the matter of Ms. Graber's increase in mortgage payments, the evidence reflects that at the time she purchased her home in California she was aware of a pending class action suit which could result in an increase of her mortgage payments. This was a situation which was clearly within her knowledge and one which she freely and voluntarily entered, and cannot be said to be a material change of circumstances which would justify the district court in modifying the decree approving the property settlement agreement.

And, finally, the matter with regard to the private schooling of the children does not constitute a material change of circumstances. Ms. Graber argues that at the time the decree was entered by the district court pursuant to the request of the parties, the children were too young for her to contemplate private school. Yet, the record reflects that the oldest child had already attended private school, and therefore one must assume that this was a matter which she either had considered or should have considered.

It may be that based upon Dr. Graber's income a settlement agreement which provided for child support in the amount of $250 per month per child without some provision for increases

as the children got older was a poor choice on the part of Ms. Graber. It is not unconscionable, and any second thoughts which Ms. Graber may now have about that original settlement cannot be corrected by seeking a modification of the original agreement.

In a line of cases beginning with *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984), we have held that while we review matters involving domestic relations de novo on the record, the matters are initially entrusted to the sound discretion of the trial court and will be affirmed on appeal in the absence of an abuse of the trial court's discretion. Furthermore, in our de novo review, where the evidence is in conflict, we will give weight to the fact that the trial judge observed and heard the witnesses and accepted one version of the facts rather than another. See *Guggenmos v. Guggenmos, supra.* We have recently extended this rule to cases involving modification of alimony awards, see *Cooper v. Cooper*, 219 Neb. 64, 361 N.W.2d 202 (1985), and actions seeking modification of child custody, see *Parsons v. Parsons*, 219 Neb. 736, 365 N.W.2d 841 (1985). We see no reason why we should not apply the same rule with regard to matters involving modification of child support. Therefore, we now declare that when reviewing applications for modification of child support, we will consider the fact that these matters are initially entrusted to the sound discretion of the trial court, and, while on appeal such matters will be reviewed de novo on the record, the decision of the trial court will be affirmed in the absence of an abuse of discretion. Our review of the record fails to disclose either a material change of circumstances not within the contemplation of the parties at the time the agreement was entered or any abuse of discretion on the part of the district court. Therefore, the judgment of the district court in denying the motion to modify child support by increasing the amount of the payment is affirmed.

AFFIRMED.

SHANAHAN, J., concurring.

There are satisfactory and unsatisfactory aspects of the majority's opinion.

The majority's disposition of the request for increased child support is correct. The record shows Dr. Graber's net income

has generally decreased since 1980, the year the child support was ordered. There is no showing that Dr. Graber's earning capacity increased before July 1984, when the application for modification was heard.

En route to the correct disposition, the majority has formulated an ill-advised principle which will undoubtedly produce dire consequences in an action for modification of a child support order: Because parents involved in dissolution proceedings contemplate that their children will "grow older and that their needs will therefore change," advance in children's ages with concomitant changes in the children's needs never justifies modification of a child support order. To support that proposition the majority relies on *Albers v. Albers*, 213 Neb. 471, 329 N.W.2d 567 (1983), and *Cooper v. Cooper*, 219 Neb. 64, 361 N.W.2d 202 (1985), which held in substance that a contemplated change of circumstances does not justify modification of an order entered in a dissolution proceeding. Neither *Albers* nor *Cooper* involved requested modification of a child support order but, rather, requested modification of an alimony award.

In *Pfeiffer v. Pfeiffer*, 201 Neb. 56, 266 N.W.2d 82 (1978), this court judicially noticed the contemporary condition of the economy in determining that child support previously ordered was less than the current, actual cost of caring for a child, and further noted "as the ages of the children increase, the expense of care is generally greater." *Id.* at 58, 266 N.W.2d at 84. In *Pfeiffer* the increased cost of maintaining children as they grew older and increased income to the parent responsible for payment of child support were "sufficiently substantial changes of circumstances" justifying a modification and increase in child support. *Id.* at 58-59, 266 N.W.2d at 84. See, also, *Rubottom v. Rubottom*, 185 Neb. 39, 173 N.W.2d 447 (1970).

This court in *Grannell v. Grannell*, 138 Neb. 456, 460, 293 N.W. 280, 281 (1940), recognized that "provisions for the maintenance of children in divorce cases are for the benefit of the child or children and not for the benefit of the parent." In *Grannell* we also held that an advance in the age of a child, from 17 months at entry of the child support order to 7 years of age at

the hearing for modification of that order, was a sufficient change in circumstances because the child "needs care of a different kind now and it is somewhat more expensive than it was at the age of 17 months." *Id.* at 460, 293 N.W. at 282.

Several jurisdictions, 27 according to the annotation at 89 A.L.R.2d 7, § 22 (1963 & Supp. 1985), agree that the natural increase in needs of children as they advance in age justifies an increase in the amount of child support, or is a factor to be seriously considered, where the parent obligated to pay child support has an increased ability to pay support greater than the amount originally ordered. Such justification for modification and increased child support exists independent of any nationwide or general increase in the cost of living or decrease in the purchasing power of the dollar. Accordingly, most courts acknowledge a fiscal fact of life—there is a natural increase in a child's needs as the child's age advances. New needs of a child arise out of the fact that a child simply grows older.

Generally, as indicated by the majority, in dissolution proceedings final resolution of property matters and the parties' personal rights by agreement between a husband and wife is a desirable goal. Previously, maintenance for a child was a child's benefit determined by two essential factors—reasonable needs of a child and earning capacity of the parent judicially obligated to pay child support. As a result of the majority's conclusion that a "poor choice" or bad bargain in an agreed amount of child support "cannot be corrected by seeking a modification of the original agreement," reasonable needs of the child to be supported have become insignificant even to the point of irrelevance. Child support is not a matter to be bartered to inadequacy at some parental bargaining table in dissolution proceedings. If a settlement agreement has the monolithic effect suggested by the majority, serious doubt is cast upon the role and duty of a court regarding continuing jurisdiction in matters of child support.

A child's transition from diapers to discotheques is an expensive journey in life. To hold that parental contemplation of a child's increase of age adversely affects a postdecree application for increased child support is an unrealistic approach to the very real problem of rising costs in raising

children. While judicial realism may vanish, reality will not. BOSLAUGH and GRANT, JJ., join in this concurrence.